UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL EMERY,

        Plaintiff,

                                  Case No.  15-11467
vs.                              HON.  GEORGE CARAM STEEH

MICHIGAN DEPARTMENT
OF CIVIL RIGHTS, MATTHEW
WESAW, and LORI VINSON,

        Defendants.

_____/

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DOC. 32)

Plaintiff Sheryl Emery alleges that defendant the Michigan Department of Civil Rights, her former employer, and its employees, defendants Matthew Wesaw and Lori Vinson, violated the Americans with Disabilities Act and Michigan's Elliot-Larsen Civil Rights Act.  This matter is presently before the Court on Wesaw's and Vinson's motion for summary judgment.  (Doc. 32).  Pursuant to Local Rule 7.1(f)(2), the Court shall rule without oral argument.  For the reasons stated below, defendants' motion is GRANTED.

# I. Background

Plaintiff, born in 1959, is a deaf, African American women. She served as the Director of the Division on Deaf and Hard of Hearing from November 16, 2008, to September 9, 2014. The Director position has been filled by a deaf or hard of hearing individual since the Division's inception. The Division's staff is comprised of deaf and hearing individuals; some of whom are not fluent in American Sign Language. For several years, the Division included a staff member who served as an interpreter. As director, plaintiff was required to follow rules governing the MDCR's authority, her own legal authority, and ethical standards including Civil Service rules and the State Ethics Act.

Amanda Niven worked as a Rights Representative at the Division with plaintiff. Niven's responsibilities included some duties as a staff interpreter. Niven made several accusations against plaintiff between April and May 2013. The MDCR investigated and, in July 2013, concluded that, contrary to Niven's complaints, plaintiff had not created a hostile work environment.

Plaintiff thereafter filed a complaint against Niven with the Registry of Interpreters for the Deaf. As a result, Niven's certification was suspended and she ceased performing interpreter duties. Plaintiff complained about

her inability to complete her responsibilities without an interpreter on staff. She eventually filed an EEOC charge, alleging failure to accommodate, on this matter on July 29, 2013.

Niven and Karlee Rose Gruetzner, another Rights Representative, raised new complaints against plaintiff in February 2014. The MDCR thereafter began investigating plaintiff for creating a hostile work environment, harassment, workplace bullying, interpreter issues, and breach of confidentiality. (Doc. 32-3 at PageID 297). Plaintiff was placed on administration suspension with pay pending the results of this investigation. In May 2014, Vinson discovered that plaintiff had created and distributed Alternative Pathways Certification/Board Evaluation of Interpreters applications. (Doc. 32-12 at PageID 383). This activity was unauthorized. The investigation concluded in September 2014. The MDCR found that plaintiff subjected her staff to harassment, created a hostile work environment, retaliated against her subordinate, and implemented certification without legal authorization. (Doc. 32-3 at PageID 325). Plaintiff's actions violated the MDCR's authority, her own legal authority under Public Act 204, Civil Service rule 2-8 and the State Ethics Act. Plaintiff was terminated on September 9, 2014.

Plaintiff filed a grievance to challenge her termination. (Doc. 32-6). She alleged that she was terminated without just cause, as she had not violated the Civil Service rules as the MDCR claimed. She further argued that she was terminated in retaliation for filing her EEOC charge. The MDCR denied plaintiff's allegations and asserted that she was terminated for violating the Civil Service rules. (Doc. 32-7). Plaintiff appealed the MDCR's answer. (Doc. 32-8).

A grievance appeal hearing was held by Hearing Officer Matthew C. Wyman on April 27, 28 and June 24, 2015. (Doc. 32-9). Wesaw testified that plaintiff's issues with harassment, a hostile work environment, and retaliation, in isolation could have been corrected through lesser discipline. (Doc. 32-9 at PageID 350). But Wesaw found plaintiff's APC violation to be far more serious and believed that this matter alone justified termination, as plaintiff had deceived the MDCR while knowingly disregarding the law. (*Id.*). On October 1, 2015, Wyman issued an opinion concluding that the MDCR had just cause to terminate plaintiff following her mistreatment of Niven and Gruetzner as well as violating the MDCR's authority, Public Act 204, the State Ethics Act, and Civil Service rule 2-8. (Doc. 32-9).

Plaintiff appealed. The Employment Relations Board issued a recommended grievance decision affirming Wyman's findings on January

27, 2016. (Doc. 32-10). The Civil Service Commission adopted the Board's recommendation as their final decision on February 26, 2016. (Doc. 32-11). Plaintiff appealed to Oakland County Circuit Court. On October 3, 2016, the Honorable Martha D. Anderson issued an opinion affirming the final decision of the Commission. (Doc. 32-12). Plaintiff filed the instant lawsuit alleging her termination on April 22, 2015.

## II. Legal Standard

Rule 56(c) empowers a court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc) (citing Fed. R. Civ. P. 56(c)). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving

party.  *Anderson*, 477 U.S. at 248, 252.  There must instead be evidence

from which a jury could reasonably find for the non-movant.  *McLean*, 224

F.3d at 800 (citing *Anderson*, 477 U.S. at 252).The evidence and all

reasonable inferences must be construed in the light most favorable to the

non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th

Cir. 2001).

### III. Analysis

**A. Prospective Injunctive Relief**

Plaintiff's *Ex Parte Young* claim against state officials acting in their

official capacity may "seek prospective relief to end a continuing violation of

law."  *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002).

Defendants assert that the only prospective injunctive relief available to

plaintiff is an "order requiring the State to provide her a reasonable

accommodation."  (Doc. 32 at PageID 267-68).  Plaintiff no longer works for

the Michigan Civil Rights Department.  Defendants thus conclude that her

claim for prospective relief is moot.  Defendant's argument fails.  "[C]laims

for reinstatement are prospective in nature and appropriate subjects to *Ex

parte Young* actions."  *Id.* at 396.

**B. Collateral Estoppel**

Defendants argue that plaintiff is collaterally estopped from litigating issues that she raised and lost during her administrative grievance and appeals.  Defendants seem to assert that these issues include plaintiff's entire retaliation claim under the ADA, (Doc. 32 at PageID 270-75), as well as findings of fact regarding just cause for plaintiff's termination, (Doc. 32 at PageID 281-85).

Defendants rely on *Nummer v. Treasury Dept.*, 448 Mich. 534 (1995). *Nummer* states that, "[g]enerally, for collateral estoppel to apply, a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment.  In addition the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel."  *Id.* 448 Mich. at 542 (internal citations omitted). "[T]hree additional requirements must be satisfied" when a defendant seeks "to preclude relitigation on the basis of an administrative decision."  *Id.* "The administrative determination must have been adjudicatory in nature and provide a right to appeal, and the Legislature must have intended to make the decision final absent an appeal."  *Id.*

In *Nummer*, the Supreme Court of Michigan determined "whether a formal and final decision by the Civil Service Commission rejecting a

discrimination claim precludes relitigation of that issue in a subsequently filed action in circuit court." *Id.* at 539.  The plaintiff filed a grievance alleging "discrimination on the basis of race and gender in violation of the civil service provisions set forth in art. 11, § 5, of the Michigan Constitution." *Id.* at 540.  This provision "states that the Civil Service Commission shall have the power to 'regulate all conditions of employment in the classified service,' and that '[n]o appointments, promotions, demotions or removals in the classified service shall be made for religious, racial or partisan considerations."  *Id.* at 540, n.1.  "In addressing the plaintiff's discrimination allegation, the commission assessed whether the Department of Treasury violated Civil Service Rule 1-2.1, which in pertinent part states: No person shall be discriminated against in . . . any condition of employment . . . because of race, color . . . or sex."  *Id.*

The *Nummer* court noted that the civil service rule at issue in the administrative decision addressed the same race and sex based discrimination that, in the instant case, allegedly violated the Michigan Civil Rights Act.  *Id.* at 542.  The court recognized "a similar factual issue as that which was actually litigated and decided in the Civil Service Commission," and, therefore, determined that "[i]t is not seriously contested that the general requirements of collateral estoppel are met."  *Id.*

Defendants argue that, here, as in *Nummer*, "it cannot seriously be contested that the general requirements of collateral estoppel are met." (Doc. 32 at PageID 274). It is not clear whether defendants assume that this case addresses all of the same issues actually litigated in the administrative decision or if defendants distort the first element of collateral estoppel to require merely an "attempt[] to argue." (Doc. 32 at PageID 272-73).

Collateral estoppel is not determined based on what a party attempts to argue, but rather, issues that are "actually litigated and determined." *Nummer*, 448 Mich. at 542. The language used in *Nummer* paraphrases more detailed statements of Michigan collateral estoppel law. For example, *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n (DPOA)*, 821 F.2d 328 (6th Cir. 1987) states that "[b]efore collateral estoppel may be applied. . . *the precise issue* raised in the present case must have been raised and actually litigated in the prior proceeding." *Id.* at 330 (emphasis added). Stated differently, "the issue must be *identical* to that determined in the prior action." *Litteral v. Household Retail Servs., Inc.*, No. 01-74905, 2003 WL 345366, at *2 (E.D. Mich. Jan. 30, 2003) (citing *N.A.A.C.P., Detroit Branch*, 821 F.2d at 330) (emphasis added). The Court, therefore, must consider whether the issue of alleged retaliation in violation of the

ADA was raised and actually litigated before the Civil Service Commission or identical to the issue(s) determined in the administrative decision.

This element was satisfied in *Nummer* because the race and sex based discrimination alleged in the subsequent lawsuit was actually litigated and determined in an administrative decision addressing a challenge to a Civil Service rule regarding the same race and sex based discrimination. *Nummer*, 448 Mich. at 542. This case, however, presents a more difficult question because the Civil Service rule plaintiff initially challenged concerns just cause as opposed to a prohibition on discrimination that parallels the ADA.

Plaintiff's September 9, 2014 grievance, raised pursuant to Civil Service rule 8-1.3(a)(3), states that she "is aggrieved by having been terminated without just cause." (Doc. 32-6 at PageID 336). Plaintiff denied the truth of the alleged violations of Civil Service rules 2-6 (2) and 2-8 (4) as well as PA 204. (*Id.*). Plaintiff asserted that the allegations were raised as pretext for retaliation of her EEOC and RID complaints. (*Id.*). In response, the Michigan Department of Civil Rights denied that the termination was based on retaliation. (Doc. 32-7 at PageID 340). This response does not constitute the decision of the Civil Service Board, and

therefore, does not illustrate that the question of fact regarding retaliation
was actually litigated and determined in a final judgment.

Plaintiff's appeal from the step two grievance answer again states
that the charges against her are solely pretext. (Doc. 32-8 at PageID 343).
The grievance decision by Hearing Officer Matthew Wyman addresses
"whether the grievant was dismissed for just cause." (Doc. 32-9 at PageID
347). This decision states:

> [t]he initial burden of proof in a disciplinary
> grievance appeal is on the employer to prove by a
> preponderance of the evidence that it had just
> cause for discipline. Implied in this burden is that a
> preponderance of the evidence also shows that the
> grievant did in fact commit the actions alleged of her
> and, if so, the actions constitutes a violation under
> the language of the rules. If proven, the burden
> then shifts to the grievant to prove by a
> preponderance of the evidence that the discipline
> violated a Civil Service rule or regulation, an agency
> work rule, or was arbitrary and capricious. The
> hearing officer cannot alter the discipline if the
> grievant does not sustain its burden.

(Doc. 32-9 at PageID 351).

Hearing Officer Wyman's grievance decision includes a three page
analysis of the MDRC's claims. (Doc. 32-9 at PageID 351-53). Wyman
evaluates evidence and determines that the Michigan Department of Civil
Rights met its burden to prove that plaintiff mistreated Niven and Gruetzner
and violated department authority and PA 204. (*Id.*). The analysis section

ends without any mention of plaintiff's allegations of retaliation. The

grievance decision proceeds to a conclusion section, which states that the

MDCR had just cause for disciplining plaintiff. (Doc. 32-9 at PageID 353).

It thereafter states that plaintiff "failed to sustain her burden to prove

dismissal violated the article 11, section 5 of the Michigan constitution, civil

service law, or was arbitrary or capricious." (*Id.*). The grievance decision's

conclusion also lacks any reference to plaintiff's retaliation allegations.

Thus, despite the fact that "[t]he parties were given full opportunity to

present testimonial and documentary evidence, examine and cross-

examine witnesses, and present oral argument," (Doc. 32-9 at PageID

347), it is not clear plaintiff argued that her termination violated the ADA.

Plaintiff thereafter appealed to the Employment Relations Board.

Neither party filed a record of plaintiff's argument before the Board. The

Board's Recommended Grievance Decision, (Doc. 32-10), however,

includes a one page summary of plaintiff's argument. (Doc. 32-10 at

PageID 366). The Board recounts arguments regarding just cause, per

plaintiff's argument that her termination violated Civil Service rule 8-

1.3(a)(3) as well as an argument that her termination was arbitrary and

capricious because the MDCR did not consider lesser discipline. (*Id.*). But

the decision does not discuss plaintiff's allegations that she was fired in

retaliation for filing an EEOC complaint.  The Civil Service Commission approved this recommendation and adopted it as the final decision of the civil service commission.  (Doc. 32-11 at PageID 378).

The Oakland County Circuit Court opinion relayed this history in the facts section of its opinion.  (Doc. 32-12 at PageID 380-88).  It likewise noted references to plaintiff's retaliation allegations in her initial grievance and the MDRC's response.  (Doc. 32-12 at PageID 385).  The opinion analyzes many of plaintiff's arguments including:

- the MDRC ignored less drastic discipline;
- the MDRC's allegations were unsubstantiated, not supported, and untrue; and
- plaintiff was discharged for filing the RID complaint, which violated her First Amendment right to free speech.

(Doc. 32-12 at PageID 388-90).  But the court did not opine on plaintiff's allegations regarding retaliation for filing an EEOC complaint.

After reviewing the record, the Court cannot rule that the issue of retaliation in violation of the ADA was raised and actually litigated before the Civil Service Commission or identical to the issues determined in the administrative order.  Thus, collateral estoppel does not apply to this issue and the Court cannot grant summary judgment on this ground.  The Court can, however, recognize that the administrative decision did actually litigated and find violations of Civil Service rules 2-6.2(2) and 2-8.2(a)(4) by

a valid and final judgment.  The Court further finds that the remaining

elements of collateral estoppel are satisfied.  Plaintiff is precluded from

relitigating questions of fact regarding the violations of Civil Service rules 2-

6.2(2) and 2-8.2(a)(4).

## C. Failure to Accommodate Claim

"In order to establish a prima facie case for failure to accommodate,

a plaintiff must show that: (1) she is disabled within the meaning of the Act;

(2) she is otherwise qualified for the position, with or without reasonable

accommodation; (3) her employer knew or had reason to know about her

disability; (4) she requested an accommodation; and (5) the employer failed

to provide the necessary accommodation."  *Johnson v. Cleveland City Sch.*

*Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011) (internal citations omitted).

Defendant argues that plaintiff has failed to prove that her employer

failed to provide a necessary accommodation.  Following Niven's removal,

the MDRC did not hire a full time interpreter or another rights

representative who could also serve as a staff interpreter.  Instead, the

MDCR arranged for interpreters to be assigned to plaintiff.  Plaintiff was

responsible for requesting interpreting services.  Defendants maintain that

this was a reasonable accommodation.  They argue that, while plaintiff may

have preferred her own personal interpreter, her employer was not required

to provide to provide this exact accommodation.  Defendants further argue that the MDCR was not required to restructure the duties of a rights representative to require interpretation services.

Plaintiff argues that she could not manage her staff or communicate with other officers of the State or the general public without a staff member that was fluent in sign language.  Plaintiff acknowledges that interpretation services were available, but states her dissatisfaction.  Plaintiff would prefer to select the interpreter herself, as opposed to using the Department of Technology, Management, and Budget (DTMB) to bid for interpreters. (Doc. 35-2 at PageID 431).  Plaintiff complains that the DTMB hired interpreters with the lowest costs instead of interpreters that she believed to be qualified or effective.  (Doc. 35-2 at PageID 432).  Plaintiff further complains that it was difficult to schedule interpreters, specifying that she had to rearrange multiple schedules to fit meetings around interpreter availability.  (*Id.*).

Much as plaintiff may have preferred her own interpreter on staff, an employer is not required to "create new jobs [or] displace existing employees from their positions . . . in order to accommodate a disabled individual."  *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000).  And while plaintiff complains that working with contract interpreters

was misaligned with her preferences, she does not put forth evidence to illustrate that this accommodation was unreasonable.  Plaintiff has, therefore, failed to prove a prima facie case of failure to accommodate under the ADA.

## D. ADA Retaliation Claim (PFC)

The ADA prohibits employers from "discriminat[ing] against any individual because such individual . . . has made a charge . . . under this chapter."  42 U.S.C. § 12203(a).  "Discrimination here means retaliation – that 'but for' an employee's statutorily protected activity the employer would not have taken the 'adverse employment action.'"  *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (internal citations omitted).  Courts use the *Mc-Donnell-Douglas* burden-shifting framework to assess retaliation claims.  *Id.*  A plaintiff "must first establish, by a preponderance of the evidence, her prima facie case."  *Id.* (internal citations omitted).  "If a plaintiff does so, the defendant has a burden of *production* to articulate a nondiscriminatory reason for its action."  *Ford Motor Co.*, 782 F.3d at 767 (emphasis in original).  "If the defendant meets its burden, the plaintiff must prove the given reason is pretext for retaliation."  *Id.*  "To demonstrate pretext, a plaintiff must show *both* that the employer's proffered reason was

not the real reason for its action, *and* that the employer's real reason was unlawful."

To avoid summary judgment, then, plaintiff must present evidence from which a reasonable jury could find that violating Civil Service rules was not the real reason that the MDRC terminated plaintiff, and that unlawful retaliation was. No reasonable jury could find that the MDRC terminated plaintiff for a reason other than plaintiff's numerous violations of the Civil Service rules. The facts underlying these violations are well documented in the record and numerous administrative decision makers, as well as an Oakland County Circuit Court judge, determined that plaintiff violated these rules and, as such, the MDRC had just cause to discipline her.

Plaintiff argues that she was terminated, not because of these violations, but as a result of filing her own EEOC complaint. Plaintiff asserts that she was suspended less than seven months after filing a complaint with the EEOC. But "temporal proximity cannot be the sole basis for finding pretext." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012). Plaintiff further asserts that she was not disciplined prior to filing the charge and had a previously unblemished career. While this appears to be true, as described below, the record justifies the MDRC's actions.

Plaintiff was not disciplined prior to filing her EEOC charge because the MDCR determined that, as of July 2013, plaintiff had not created a hostile work environment. Moreover, Wesaw's testimony regarding the severity of the unauthorized Alternative Pathways Certification applications illustrates why she was terminated despite her prior positive performance. Plaintiff has failed to present evidence from which a reasonable jury could find that the real reason behind her termination was retaliation and not violations of the Civil Service rules. Defendants are entitled to judgment as a matter of law because plaintiff created at most "a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Protects, Inc.*, 530 U.S. 133, 148 (2000). "Lacking evidence that creates a genuine dispute of fact, [plaintiff's] retaliation claim fails as a matter of law." *Ford Motor Co.*, 782 F.3d at 769-70.

Defendants are further entitled to summary judgment because plaintiff has failed to plead a prima facie case. "A prima facie case of retaliation has four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and

4) the protected activity and the adverse employment action are causally connected." *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). Plaintiff asserts that her EEOC complaint was a legally protected activity, defendants were aware of this activity, plaintiff was terminated, and the EEOC complaint and her termination are related. But, for the reasons stated in the preceding discussion regarding pretext, plaintiff has failed to present evidence from which a reasonable jury could find that the MDCR would not have fired her if she had not made her charge.

## E. ELCRA Claim (PFC)

Plaintiff also asserts that her termination was a result of age and race discrimination in violation of the ELCRA. She does not offer any direct evidence and instead relies on the *McDonald-Douglas* framework described above.

To prove a prima facie case of age and race based discrimination, a plaintiff must establish that they were "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 695 (1997).

Defendants argue that plaintiff has not shown other similarly situated employees outside the protected class who were treated differently. Plaintiff argues that she fulfills this element by demonstrating that she was replaced by a younger white man. She further argues that she was treated differently than her predecessor, a white male, who always had a certified interpreter on staff. Finally, plaintiff asserts that she was treated differently than employees outside these protected classes who alleged that she created a hostile work environment. This allegation seems to refer to Nivens and Gruetzner. Plaintiff claims that, although department rules required written complaints, unnamed subordinate co-workers were able to make verbal complaints. Plaintiff's arguments fail.

> For purposes of establishing a prima facie case, "similarly situated" employees must be similarly-situated in all respects. Thus, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Gibbs v. Voith Indus. Servs., Inc.*, 60 F. Supp. 3d 780, 795 (E.D. Mich. 2014) (internal citations omitted).

Plaintiff's arguments fail because she has not met this standard. She does not allege that her predecessor, successor, or subordinates have "engaged in the same conduct," namely, violating Civil Service rules 2-6.2(2) and 2-8.2(a)(4). Plaintiff has, therefore, failed to establish a prima facie case. The Court also notes that plaintiff's pretext arguments, discussed above, fail as well. Defendants are entitled to summary judgment on both grounds.

## IV. Conclusion

For the reasons stated above, defendants' motion is GRANTED.

IT IS SO ORDERED.

Dated: September 28, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 28, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk